# Harper v. Campbell.

*Bill in Equity to Enforce a Vendor's Lien.*

1. *Demurrer; when presumed waived.*—When a demurrer to a bill in

equity does not appear to have been called to the attention of the court, and it is not shown by the record that there was a ruling or decision thereon, the presumption on appeal is that such demurrer was waived.

2. *Statute of frauds; when not available on demurrer.*—The statute of frauds is not available as a cause of demurrer to a bill in equity to enforce a vendor's lien, unless it affirmatively appears from the averments of the bill that the contract or promise was not in writing.

3. *Same; must be pleaded.*—On a bill filed to enforce a vendor's lien, the defense of the statute of frauds, if not raised by plea or by answer, is not available on the hearing, although it may appear from the evidence that the contract of sale was only verbal.

4. *Bill to enforce vendor's lien; judgment in ejectment suit no bar.*—A judgment in an action of ejectment is not conclusive as to the equitable rights and relations of the parties, and is, therefore, no bar to a subsequent suit in equity by the defeated party to enforce a vendor's lien on the land involved in said ejectment suit; the ejectment suit could be maintained or defended only on the legal right to the possession, without regard to the equities of the parties.

APPEAL from the Chancery Court of Geneva.
Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed by the appellee, C. B. Campbell, against the appellant, J. B. Harper; and prayed to have enforced a vendor's lien on certain lands described in the bill of complaint, for the payment of the purchase money thereof.

The bill alleges that on January 4, 1887, the complainant, through his agent, sold to the respondent, J. B. Harper, three lots in the town of Geneva, which are the lots in controversy, for the sum of $650 to be paid for in two months thereafter; that the said Harper was put in possession of said lots, and occupied the same under a contract of purchase until the 18th day of September, 1888, when he pretended to purchase two of the lots from one Dan Powell, at the price of $175; that the said Powell and wife executed and delivered to the said John B. Harper their warranty deed to the lands, and that since that time the said Harper has set up an adverse claim to the lots, and refused to comply with the terms of the contract made with the complainant's agent for the purchase of the said lots. The bill further alleges that the complainant purchased the three lots in controversy from one Julia A. Fleming, and her husband, the lands being a part of Mrs. Fleming's statutory separate estate; that this purchase was made on January

16, 1884, and the said Mrs. Fleming and her husband executed to the complainant their warranty deed for said lots, and the complainant went into possession of the same under said purchase, and occupied them as his homestead until November, 1886. It was further averred in said bill that in August, 1883, these same lots were sold at a sheriff's sale as the property of Mrs. Julia A. Fleming, and were purchased by H. A. Tankard, Mrs. Fleming's son-in-law, he buying them for her benefit at her request, and that the sheriff's deed was executed to the said H. A. Tankard; that the said H. A. Tankard borrowed from one Dan Powell $140 for the purpose of making the payment at the sheriff's sale, and that in order to secure the payment of the said sum to Powell, H. A. Tankard executed a quit-claim deed to said lots, which, it was agreed, should be considered as a mortgage. On January 18, 1884, the complainant paid to said Powell $100 on said debt, for which amount the said Powell delivered to the complainant his receipt acknowledging that it was paid on the mortgage debt of H. A. Tankard; and that said Powell agreed to wait until the complainant could pay him the balance. It was further alleged in the bill that within three weeks of said sale Mrs. Fleming and her husband paid to the said H. A. Tankard $150, the amount he paid for said lots at sheriff's sale, the said Tankard agreeing to take said amount in full redemption of said lots.

The answer of the respondent was a general denial of the material allegations of the bill, and he avers that the matters in controversy had been adjudged against the complainant in an action of ejectment he instituted against the respondent in the circuit court for the recovery of said lots, in which suit it was adjudged that complainant here was not entitled to the lots. A demurrer was interposed assigning several causes, among which was the statute of frauds; but this demurrer does not appear to have been ruled upon by the chancellor.

The complainant's evidence sustained the averments of the bill, and tended to show that the defendant went into possession of the lots, first as a renter from the complainant's agent, and that after he had occupied them as tenant for a short time, he contracted with the said agent of the complainant for the purchase of the lots, agreeing to give $650 therefor, but that none of the pur-

[Harper v. Campbell.]

chase money agreed to be paid has ever, in fact, been paid. The defendant denied having purchased the lots from the complainant, but rested his title to the same upon a deed from Powell.

On the final submission of the cause, the chancellor granted the relief prayed for by the complainant, and this decree is here assigned as error by the respondent, who prosecutes the present appeal.

H. L. MARTIN, for appellant.

W. D. ROBERTS, contra.

STONE, C. J.—There was a demurrer interposed, assigning among other causes that the contract of purchase of the lands was offensive to the statute of frauds; but this demurrer does not appear to have been called to the attention of the chancellor. He made no ruling or decision thereon. The presumption on error is that the demurrer was waived.—Corbitt v. Carroll, 50 Ala. 315; Daughdrill v. Helms, 53 Ala. 62. If this presumption was not indulged, the demurrer is bad, obviously. The averment of the contract in the bill is general, not stating whether it was written or verbal. The statute of frauds is not available as a cause of demurrer, unless it affirmatively appears from the averments of the bill, that the contract or promise was not in writing.—Bromberg v. Heyer, 69 Ala. 23; Phillips v. Adams, 70 Ala. 373; Manning v. Pippen, 86 Ala. 357, 5 So. Rep. 572. The defense of the statute, if not raised by plea or by the answer, is not available on the hearing, though it may appear from the evidence that the contract was only verbal.—Shakespeare v. Alba, 76 Ala. 357, and cases cited.

2. The verdict and judgment in the ejectment suit, was not conclusive as to the equitable rights and relations of the parties. That suit could be maintained or defended only on a legal right to the possession, without regard to the equities of the parties.—3 Brick. Dig. 324, § 27 et seq. The verdict and judgment are conclusive only that the appellee had not at the commencement of the suit the legal right to the possession.

We find no error in the record prejudicial to the appellant, and the decree must be affirmed.